STATE, Respondent v. COLE, Appellant

(168 N.W.2d 507)

(File No. 10588. Opinion filed June 5, 1969)

**William F. Day, Jr.,** Winner, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Edward M. Blando,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

HANSON, Judge.

The main question presented on defendant's appeal is the sufficiency of the evidence to sustain conviction of the crime of obtaining money from another by means of and by use of the confidence game.

The crime is defined in SDC 13.4203: "Every person who shall obtain, or attempt to obtain, from another any money or property by means or by use of any false or bogus check, draft, or by any other means, instrument, or device commonly called or known as the confidence game, shall be guilty of a felony, and upon conviction thereof shall be imprisoned in the State Penitentiary not less than one year nor more than ten years." Although enacted in 1905 (§ 1, Ch. 108, 1905 and § 4255, Rev.Code 1919) this statute has never been the subject of an appeal to this court. However, there are numerous cases in which similar statutes have been applied and interpreted in other jurisdictions. See 32 Am.Jur.2d, False Pretenses, §§ 83, 84 and 85; 35 C.J.S. False Pretenses § 32 et seq.; and Vol. 8A Words and Phrases, "Confidence Game", p. 71 et seq.

■ The term "confidence game" is said to have "derived from the colloquial phrase 'confidence man', meaning a rogue or swindler who by various arts and wiles seeks to gain the confidence of his victims for the purpose of cheating them." Vol. 2, Burdick Law of Crime, § 650, p. 510. The swindling transaction need not be in the form of a game and, according to the general rule, "in order to come within the provisions of a confidence game statute there need be no token, symbol, or device; mere words are sufficient." Vol. 2, Wharton's Criminal Law and Procedure, § 618, p. 392.

In People v. Lewis, 17 Ill.2d 403, 161 N.E.2d 821, the confidence game statute is said to be "designed to reach the class of offenders known as 'confidence men' who practice swindling schemes, 'as various as the mind of man is suggestive,' upon unwary victims. People v. Jackson, 4 Ill.2d 296, 122 N.E.2d 813; People v. Martin, 372 Ill. 484, 24 N.E.2d 380; Morton v. People, 47 Ill. 468.

"The gist of the crime of confidence game is the obtaining of the confidence of the victim by some false representation or device. People v. Harrington, 310 Ill. 613, 142 N.E. 246; People v. Peers, 307 Ill. 539, 139 N.E. 13. It covers any fraudulent scheme, trick or device whereby a swindler wins the confidence of his victim and then cheats him out of his money or property by taking advantage of the confidence reposed in him. People v. Jackson, 4 Ill.2d 296, 122 N.E.2d 813; People v. Priola, 395 Ill. 296, 70 N.E.2d 46; People v. Marmon, 389 Ill. 19, 58 N.E.2d 603; People v. Bimbo, 369 Ill. 618, 17 N.E.2d 573; People v. Peers, 307 Ill. 539, 139 N.E. 13.

"The form of the transaction is not material. People v. West, 406 Ill. 249, 93 N.E.2d 370. It matters not that it was made to assume the form of a lawful business deal if in fact it was a swindling operation. People v. Brand, 415 Ill. 329, 114 N.E.2d 370; People v. Glenn, 415 Ill. 47, 112 N.E.2d 133; People v. Marmon, 389 Ill. 19, 58 N.E.2d 603. But a swindling operation does not constitute the confidence game unless the element of confidence is present and it is not enough to show that money or property has been obtained by false pretenses, which have been defined as any designed misrepresentations of an existing condition by which a party obtains the goods of another. People v. Marmon, 389 Ill. 19, 31, 58 N.E.2d 603; People v. Peers, 307 Ill. 539, 542, 139 N.E. 13. The moving cause for the victim's parting with his money or property must be the confidence reposed in the accused. People v. Gallowich, 283 Ill. 360, 364, 119 N.E. 283."

In reviewing the evidence in the present action it appears that on September 25, 1967 defendant, Richard Cole, and one David Young, made an unsolicited call at the ranch home of Mrs. Olive Dubray, which is located about 30 miles northwest of Winner. Defendant was branch manager and Young was a sales trainee of the Kirby Vacuum Sweeper Company of Rapid City. The two men had known each other and worked together selling vacuum sweepers about two weeks.

The reason the two men stopped at the ranch was because Young had sold the complaining witness, Mrs. Dubray, an insurance policy about a year before. When they arrived Mrs. Dubray said "I don't believe I know you." Young replied "Why I am your insurance man." There followed a discussion about insurance during which Mrs. Dubray was informed the insurance company was giving prizes to old policyholders. Every policyholder was entitled to free steak knives and if the policy had a "Blue Eagle" on it the policyholder was further entitled to receive a free vacuum sweeper. The two men were admitted to Mrs. Dubray's home. Her insurance policies were examined and she was informed she was doubly lucky and entitled to both prizes.

Young was doing most, if not all, the talking about insurance. When Mrs. Dubray was advised she was a winner, defendant went out to his car and returned with a set of steak knives and a new Kirby vacuum sweeper which he demonstrated. Mrs. Dubray was not interested in buying or receiving a vacuum sweeper because she already had two in the house and no carpeting. Her floors were covered with linoleum. Defendant told her, in substance, "why not take the sweeper, it's free."

In the course of the conversation Young also informed Mrs. Dubray the company was putting out a new $5,000 life insurance policy which could be paid up for life in one lump sum. The meeting culminated with Mrs. Dubray signing a check payable to David Young in the sum of $354.00 and she was handed a conditional sale contract, which she did not read, for a vacuum sweeper and attachments marked "paid in full". Although a new vacuum sweeper was used in the demonstration, Mrs. Dubray was given a used or secondhand one. At the conclusion of the conversation Mrs. Dubray was advised they did not need any further information from her regarding her new policy as they had the records of her old policies and would be back. Mrs. Dubray took everything defendant and Young said and did for granted because the insurance men that came to her place were always honest.

Defendant and Young went directly from the Dubray ranch to the bank in Presho where they cashed the check in the amount of $354.00 and divided the proceeds equally. Both men testified at the trial. At the time Young was incarcerated in the State Penitentiary following conviction of the crime of Third Degree Forgery committed after the Dubray incident. At the time defendant and Young talked to Mrs. Dubray neither one represented an insurance company. Young's license to sell insurance had previously been revoked.

 The evidence amply sustains conviction in the present case. Defendant and Young gained the confidence of Mrs. Dubray by falsely representing to be insurance agents. Under this pretense they gave her a set of steak knives and a second-hand vacuum sweeper as prizes for being a lucky "Blue Eagle" policyholder. They then proceeded to fraudulently obtain $354.00 from their victim by falsely pretending to sell a paid-up life insurance policy. It is immaterial that Young did most of the talking about insurance. All of the conversations and representations were made in defendant's presence. After Mrs. Dubray indicated she was not interested in a vacuum sweeper—even as a prize—defendant told her she might as well keep it because it was "free". He also willingly accepted half of the fruits of their fraud. The distinction between principals and accessories before the fact has long been abolished in this state. SDC 13.0203. For comparative cases involving sufficiency of evidence see People v. Caruth, 28 Ill.2d 514, 192 N.E.2d 911; People v. Gipson, 29 Ill.2d 336, 194 N.E.2d 318; Patterson v. People, 138 Colo. 368, 333 P.2d 1047; and State v. Weber, Mo., 298 S.W.2d 403.

Finding no error in the instruction of the court, the judgment appealed from is affirmed.

All the Judges concur.