Gilbert L. THORNE, Appellant,

v.

UNITED STATES, Appellee.

No. 81–748.

District of Columbia Court of Appeals.

Submitted Sept. 2, 1982.

Decided Oct. 27, 1982.

Joann R. Deutch, Washington, D.C., appointed by this court, for appellant.

Stanley S. Harris, U.S. Atty., with whom John A. Terry, Asst. U.S. Atty., at the time the brief was filed, John R. Fisher, Ava J. Abramowitz, and E. Anne McKinsey, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, PRYOR and BELSON, Associate Judges.

PER CURIAM:

Appellant was convicted of attempting to "deal, play or practice the game called three-card monte" pursuant to D.C.Code 1981, § 22–1506. Appellant now, as at trial, asserts that a necessary element of the offense is a demonstrated intent by a defendant to deceive or trick. The trial court expressly rejected this claim.[1] We affirm.

Appellant was arrested while engaging with pedestrians in the game of three-card monte.[2] The arresting officer observed two individuals play the game with appellant before the officer himself offered a wager and, after losing, placed appellant under arrest. Throughout the trial, it was appellant's contention that so long as he utilized only his own skills in playing the game, the statute would not apply.

▮▮▮ The statute under which appellant was convicted provides as follows:

Whoever shall in the District deal, play, or practice, or be in any manner accessory to the dealing or practicing, of the confidence game or swindle known as 3-card monte, or of any such game, play, or practice, or any other confidence game, play, or practice, shall be deemed guilty of a misdemeanor, and shall be punished by a fine not exceeding $1,000 and by

imprisonment for not more than 5 years. [D.C.Code 1981, § 22–1506.].

Effectively, appellant's argument is that because three-card monte is described within the statute as "the confidence game or swindle known as three-card monte," then, necessarily, the traditional elements of a confidence game, including false representations by the alleged perpetrator, must be incorporated into the statutory definition. This argument is misplaced in light of the case law. This court has circumscribed the scope of D.C.Code 1981, § 22–1506, rejecting its applicability to prosecutions of conventional fraud or deceit. *United States v. Brown*, D.C.App., 309 A.2d 256, 258 (1973); *see also Pender v. United States*, D.C.App., 310 A.2d 252, 254 (1973); *Bond v. United States*, D.C.App., 310 A.2d 221, 226 (1973); *Mozelle v. United States*, D.C.App., 310 A.2d 213, 214 (1973). Indeed, we have interpreted this statute to distinguish the "confidence game" of three-card monte from more traditional confidence games requiring fraudulent representations. *United States v. Brown, supra.* The mere playing of three-card monte is therefore statutorily proscribed.[3]

In sum, we find no persuasive reason, particularly in the face of the straightforward language of the statute, to limit its application to the *fraudulent* playing of three-card monte. We hold that the statute was enacted to outlaw the mere playing of

1. The trial judge found the following:

I think the way the Congress used it—I'm agreeing with the Government in the interpretation of the law in this one—it doesn't require swindling or cheating.... I do believe the Congress had in mind a simple game, three-card monte, and the Congress is saying if you play it for money in the District of Columbia, we're outlawing it, whether you play it fairly or unfairly. They don't really care.

That leads me to find the defendant guilty. (Record at 61–62.)

2. The trial court defined three-card monte as follows:

I find for purposes of this case that three-card monte as used in the statute means at least the game which was demonstrated to us by the Government witnesses and by Mr. Thorne; that is, a gambling game using money, employing three cards which are shuffled

by the dealer and the players select a card from that group of three and if he selects the predesignated card, he wins, and if he does not, he selects the card that is not predesignated, he loses. (Record at 61–62.)

3. Case law from other jurisdictions also supports this conclusion. *See State v. Edgen,* 181 Mo. 582, 584, 80 S.W. 942, 944 (1904) (holding under a similar statute that "the statute is leveled at playing [three-card monte], and practicing the game, and the guilt of any person violating it in no way depends upon whether or not money or property was bet upon it"); *State v. Terry,* 141 Kan. 922, 44 P.2d 258 (1935) (holding that five-card stud did not fall under a statute outlawing three-card monte, and that under the legislative history of the statute "its obvious purpose was to stamp out the game or any such game ...."); *see also State v. Hale,* 134 Mont. 131, 328 P.2d 930 (1958).

the game and so appellant's conviction must stand.[4]

_Affirmed._

**4.** We find appellant's constitutional attack for vagueness of the statute to be without merit since § 22–1506 proscribes the game which he concededly played. _Leiss v. United States,_ D.C.App., 364 A.2d 803, 807 (1976).